**CAROL GOULD, Plaintiff**

**v.**

**CROWLEY MARITIME CORP., and TRAILER MARINE TRANS-
PORT, Defendants**

S.C. No. 1049/1991

Territorial Court of the Virgin Islands

Div. of St. Croix at Kingshill

May 18, 1992

CAROL GOULD, Tranberg Travel, Christiansted, St. Croix, V.I., *pro se*

KEITH O'NEALE, Registered Agent, Christiansted, St. Croix, V.I., *for
defendants*

CABRET, *Judge*

## MEMORANDUM OPINION AND ORDER

In May of 1986 the plaintiff entered into a contract with the De-
fendants to ship her vehicle, a 1988 Oldsmobile Cutlass Ciera, from
Pennsauken, New Jersey, to St. Croix. At the same time she was
given a document entitled "Automobile Inspection Record". This
document showed the car to be in good physical condition. Addi-
tionally, plaintiff testified that when she delivered her car to the
carrier in Pennsauken, New Jersey, the car was in a very good oper-
ating condition. Upon receipt of the car on St. Croix, Plaintiff noted
a knocking in the engine. She reported the problem to Defendants'
agent, O'Neale's Transport, Inc., and it was noted on a second Au-
tomobile Inspection Record. Because the engine had also seized,
the Plaintiff had to have the vehicle towed to Antilles Automotive.
At Antilles it was found that the vehicle had sustained damage to

its fly wheel, crank shaft, flex plate, and timing gears. A letter submitted by the service manager at Antilles states that in his 24 years with General Motors he has seen such damages only when a transmission is dropped into gear while the engine is at a high R.P.M. speed.

The Plaintiff is seeking compensation in the amount of $3,124.93 for damage to her vehicle and for car rental expenses. The Defendants chose not to dispute the fact of liability, but instead contend that their liability is limited to an amount not in excess of $500 because of the incorporation into the bill of lading of the Carriage of Goods by Sea Act (COGSA).[1] 46 U.S.C. § 1300 et seq.

## DISCUSSION

COGSA generally applies to bills of lading issued in connection with the carriage of goods by sea to or from ports of the United States in foreign trade, but the parties to a bill of lading may agree that the Act shall apply to the carriage of goods between ports of the United States and its possessions. 46 U.S.C. § 1312; First National Bank & Trust v. Hess Oil, 21 V.I. 104, 106, n. 1 (D.V.I. 1984). In this case, paragraph one of the conditions printed on the back of the bill of lading states in pertinent part as follows:

> This bill of Lading and the applicable tariff of Carrier shall have effect while the goods are in the custody of the Vessel or Carrier its agents, servants, and independent contractors[.] When this Bill of Lading governs it is subject to the provisions of the Carriage of Goods by Sea Act of the United States approved April 16, 1936 ("COGSA") which are incorporated herein and nothing herein contained shall be deemed a surrender by Carrier of any of its rights immunities or limitations or an increase of any of its responsibilities or liabilities under COGSA[.] If any term of this Bill of Lading is repugnant to COGSA to any extent, such term shall be void to that extent, but no further[.] COGSA shall govern throughout the time the goods are in the custody of or are the responsibility of the Car-

---

[1] Generally the shipper seeking to recover from a carrier for damage to goods bears the initial burden of proving that the goods were delivered to the carrier in good condition and returned in a damaged state. The shipper is not, however, required to prove that the carrier was at fault or how the damage might have occurred. M. Golodetz Export Corp. v. S/S Lake Anja, 751 F.2d 1103 (2nd Cir. 1985).

rier including before the goods are loaded on and after they are discharged from the vessel.

Thus, COGSA was properly incorporated into the bill of lading such that the Act became applicable during the entire time that the Plaintiff's vehicle came into the Defendants' custody until delivery was made on St. Croix.

COGSA limits the liability of the carrier, in this case the Defendants, to $500 per package unless the nature and value of the goods have been declared by the Plaintiff before shipment. Paragraph 21 of the bill of lading states in part as follows:

> Carrier shall not be liable in any event for any loss, damage, misdelivery or delay with respect to the goods in an amount exceeding $500 lawful money of the United States per package, or in the case of goods not shipped in packages, per customary freight unit, unless the nature of the goods and a valuation thereof of higher than $500 is declared in writing by Shipper on delivery of the goods to Carrier and inserted in the Bill of Lading and extra freight is paid hereon as required by the applicable tariff to obtain the benefit of such higher valuation in which event Shipper agrees that the value of the goods shall not exceed such declared value and any partial loss or damage shall be adjusted pro rata on the basis thereof[.]

In First National Bank & Trust Co. v. Hess Oil, supra, at 108, it was said that "as an important restriction on the carrier's right to so limit its liability, and to guarantee that carriers respect the statutory option to declare a higher value, the carrier is required to give the shipper a 'fair opportunity' to choose between a higher or lower liability by paying a correspondingly greater or lesser freight charge." The above-quoted language limiting the liability of the Defendants is usually sufficient to show that the shipper was given a fair opportunity to choose a higher liability.[2]

Plaintiff argues that she did in fact declare the value of the vehicle to be $5700. Indeed, on the bill of lading itself there is a notation

---

[2] In this case however, the limiting provision is written in fine print, practically illegible to the naked eye. In fact, the undersigned had to enlarge the provision some 200% in order to read it. There is authority that would allow the Court to invalidate the clause because of illegibility, but the Court declines to decide this case on that basis. See Nemeth v. General S.S. Corp., Ltd., 694 F.2d 609 (9th Cir. 1982).

showing a valuation of $5700. The Defendants counter that even though a higher valuation was noted on the face of the bill of lading, Plaintiff still could not claim that Defendants are liable in excess of $500 because she never paid extra freight for the higher valuation. A similar position was argued by the carrier in Travelers Indemnity Co. v. M.S. Kiso Maru, 471 F. Supp. 898 (S.D.N.Y. 1979), but there the Court rejected the argument, stating as follows:

> Nippon correctly points out that Travelers has not yet paid the additional ad valorem freight charge. The tariff does indeed provide that the additional ad valorem liability will be assumed by the carrier only "at the request of the shippers and upon payment of an additional charge of 5.3% ad valorem of the total declared FOB valuation in addition to the stipulated rate on the commodities shipped . . . ." However, the above-quoted portion of the tariff makes it clear that the carrier must assess the additional freight charge before it is to be paid. The fact that a shipper requests additional ad valorem coverage is established by showing the value of the goods on the bill of lading, which was done in the instant case.

Id. at 903; (citation omitted).

Similarly, in the case at bar it was up to the Defendants to assess an additional freight charge once the Plaintiff declared a higher value for her vehicle and inserted that valuation on the face of the bill of lading. Freight tariff no. 11, which the Defendants supplied to the Plaintiff after her car was shipped, and which they claim governs their limitation of liability, states in pertinent part as follows:

> Shipper may increase the liability of the carrier above $500 package or customary freight unit (but in no event more than the fair market value of the goods at the place of discharge) by declaring a value for the goods and having such declared value inserted in the bill of lading. In the event of such declaration: (i) the freight rate set forth in this tariff will be charged plus two percent of the value which exceeds $500 per package or, in the case of goods not shipped in packages, per customary freight unit; (ii) the liability of the carrier shall be limited to the declared value of the goods or the fair market value of the goods at the place of discharge, whichever is less.

The Plaintiff testified that she declared the value of her vehicle to be $5700 and this value was inserted on the face of the bill of lading

under a column entitled "Description of Packages and Goods". She also testified, without contradiction, that she paid the freight assessed to her by the Defendants. Freight tariff no. 11 requires the Plaintiff to declare a higher valuation and insert that valuation on the face of the bill of lading and then pay the total freight charged by the Defendants. The burden is upon the carrier to assess the additional freight based upon the higher valuation. The fact that the Defendants chose not to assess additional freight, or that they negligently failed to do so, should not affect Plaintiff's election or her right to recovery. Accordingly, this Court concludes that in this particular case COGSA does not limit the liability of the carrier to $500.00.

## ORDER

It is hereby ORDERED that a hearing to establish damages shall be held on Friday, May 28, 1992 at 8:30 a.m.